**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

B.H.,

          Defendant.

No. C04-2051-LRR

**ORDER**

---

**TABLE OF CONTENTS**

I.  INTRODUCTION AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . 1

II. STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . 3

III. STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . 8

IV. DECLARATORY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . 9

V.  COLLATERAL ESTOPPEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    A.  Application of the Elements of Collateral Estoppel . . . . . . . . . . . . . . 11
    B.  Privity and Virtual Representation . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

### *I.  INTRODUCTION AND PROCEDURAL BACKGROUND*

      The matter before the court is Plaintiff's Motion for Summary Judgment (docket no. 5).  The motion is resisted.

      On July 29, 2004, Plaintiff filed its Complaint for Declaratory Judgment and Ancillary Relief (the "Complaint") asking the court to declare that Defendant's firearms,

ammunition, and related items seized during a criminal investigation are contraband as to Defendant and to order the items destroyed. Plaintiff invokes this court's jurisdiction under 28 U.S.C. § 1331, alleging there exists a federal question of whether firearms, ammunition and related items may be returned to a person adjudicated to be seriously mentally impaired under Iowa law and involuntarily committed as an outpatient to a mental institution, or whether those items are contraband under 18 U.S.C. § 922(g)(4)[1] and thus the items should be destroyed. Plaintiff seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and Federal Rule of Civil Procedure 57, which allow a court to enter a declaratory judgment as long as there exists an actual controversy.

On November 19, 2004, Plaintiff filed the pending Motion for Summary Judgment. On December 13, 2004, Defendant filed a pro se resistance.

On January 13, 2005, the court ordered the Clerk of Court to appoint an attorney to represent Defendant due to the criminal ramifications which could result if the firearms were returned to Defendant. On that date, attorney Michael Lahammer was appointed to represent Defendant. On March 14, 2005, Defendant, through counsel, filed an Answer to the Complaint.

On March 24, 2005, the court ordered supplemental briefing from the parties regarding the potential applicability of collateral estoppel and res judicata in light of the fact the issue raised in the declaratory judgment action already was decided in state court. On April 7, 2005, Plaintiff filed its supplemental brief. On April 21, 2005, Defendant filed his supplemental brief.

---

[1] 18 U.S.C. § 922(g)(4) provides as follows: "It shall be unlawful for any person . . . (4) who has been adjudicated as a mental defective or who has been committed to a mental institution; . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

The court held a hearing on June 14, 2005. Defendant was personally present and represented by his attorney, Mr. Lahammer. Assistant United States Attorney Robert Teig represented Plaintiff. Finding the motion to be fully submitted, the court turns to address the merits of Plaintiff's Motion for Summary Judgment.

## II. STATEMENT OF UNDISPUTED FACTS

On November 19, 2004, Plaintiff filed a Statement of Facts in Support of [its] Motion for Summary Judgment. On December 13, 2004, in response to Plaintiff's Motion for Summary Judgment, Defendant, acting pro se, filed a letter and attached a copy of the Black Hawk County Court Order relevant to these proceedings. Defendant's pro se filing did not respond to Plaintiff's Statement of Facts as required by Local Rule 56.1(b)(2).[2] In such a case, the Local Rules provide as follows:

> A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.

LR 56.1(b). The court is cognizant of the fact that at the time Defendant resisted Plaintiff's Motion for Summary Judgment, he appeared pro se. Therefore, his pro se resistance must be liberally construed and held to a less stringent standard than a formal

---

[2] Because Defendant's counsel has not filed a resistance to Plaintiff's Motion for Summary Judgment other than the supplemental briefing ordered by the court regarding the issues of collateral estoppel and res judicata, the court will look to Defendant's pro se resistance as it addresses any other issues arising in Plaintiff's Motion for Summary Judgment, including any disputed facts.

pleading drafted by a lawyer. *See Taylor v. Dickel*, 293 F.3d 427, 432 (8th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). As such, any fact set forth by Plaintiff which appears to be disputed by Defendant's letter or the attached Black Hawk County Court Order shall be deemed disputed for the purpose of deciding Plaintiff's Motion for Summary Judgment.

Defendant is a 60-year old resident of Waterloo, Iowa. A doctor evaluated Defendant's mental condition on August 21, 2002, pursuant to Iowa Code § 229.10.[3] The doctor diagnosed him with Schizophrenia and stated Defendant "is very hostile toward family and friends. He has a history of homicidal ideations and threats. Currently has violent thoughts, has several guns in home and stores live ammunition." In response to

---

[3] Iowa Code § 229.10 provides, in relevant part,

> An examination of the respondent shall be conducted by one or more licensed physicians, as required by the court's order, within a reasonable time. If the respondent is detained pursuant to section 229.11, subsection 2, the examination shall be conducted within twenty-four hours. If the respondent is detained pursuant to section 229.11, subsection 1 or 3, the examination shall be conducted within forty-eight hours. If the respondent so desires, the respondent shall be entitled to a separate examination by a licensed physician of the respondent's own choice. . . . Any licensed physician conducting an examination pursuant to this section may consult with or request the participation in the examination of any qualified mental health processional, and may include with or attach to the written report of the examination any findings or observations by any qualified mental health professional who has been so consulted or has so participated in the examination. . . .

Iowa Code § 229.10(1).

the question, "In your judgment, is [Defendant] likely to physically injure himself . . . or others?" the doctor typed, "Yes." The doctor recommended Defendant remain hospitalized while receiving treatment for his mental illness.

On August 22, 2002, a state involuntary hospitalization proceeding was initiated against Defendant in Black Hawk County, Iowa, pursuant to Iowa Code § 229.6. On August 23, 2002, a state search warrant was issued in Black Hawk County pursuant to Iowa Code § 809.1(1)(c), authorizing the search of Defendant's premises and vehicles and the seizure of firearms and ammunition and other dangerous weapons for safekeeping. Law enforcement officers executed the warrant the same date and seized thousands of rounds of ammunition, 12 handguns, 8 long guns, and over 150 pounds of gunpowder.

On September 4, 2002, after a hearing in compliance with Iowa Code § 229.12, a judicial hospitalization referee ("referee") found by clear and convincing evidence Defendant was "seriously mentally impaired." Despite the doctor's recommendations, the referee determined Defendant did not need inpatient psychiatric treatment. Rather, the referee "ORDERED that [Defendant] be immediately committed as an out-patient to Black Hawk-Grundy Mental Health Center for a complete evaluation and appropriate treatment."

On October 22, 2002, January 31, 2003, and March 24, 2003, the referee ordered that Defendant's "out-patient commitment previously ordered herein . . . continue for the reason that [Defendant] is in need of continued out-patient care."

On October 24, 2002, Defendant applied to the Iowa District Court in and for Black Hawk County for return of the items seized pursuant to the August 2002 warrant. The Honorable K.D. Briner, District Court Judge for the First Judicial District of Iowa, denied Defendant's request, finding Defendant "remain[ed] committed for outpatient treatment" and "the seized materials [could not] be returned to [Defendant] without endangering him, his family, law enforcement officers and the public." Judge Briner also ordered that

Defendant could "make another claim when he was discharged from treatment under the commitment order. . . ."

On April 10, 2003, the referee reviewed the periodic report from the Designee of the Chief Medical Officer of the Black Hawk-Grundy Mental Health Center regarding Defendant's status and, based on the medical report, ordered Defendant discharged from his out-patient commitment.

On November 6, 2003, the Honorable Stephen C. Clarke, District Court Judge for the First Judicial District of Iowa, granted Defendant's motion for return of the seized property.[4] Judge Clarke set forth the testimony of Thomas Eachus, executive director of the Black Hawk-Grundy Mental Health Center, regarding Defendant's mental status:

> [Eachus] acknowledged [Defendant's] lengthy history of mental health treatment. He also acknowledged [Defendant's] long-term hobbies of gun collection and target shooting. Mr. Eachus advised the court that [Defendant] has had these hobbies throughout his adult life, and that[,] in Mr. Eachus' opinion[,] returning the seized property would present no danger either to [Defendant] or to the community.

Following a brief recitation of the evidence presented, Judge Clarke held, in relevant part:

> The County Attorney's Office urges that 18 U.S.C. [§] 922 applies to [Defendant] in this case. In the court's opinion, it does not. [Defendant] legally possessed the seized property prior to August of 2002. The property has remained in Black Hawk County, Iowa, and has never been shipped through interstate commerce since that date. Further, [Defendant] was never committed to a mental institution. He was committed for outpatient treatment to the Black Hawk[-]Grundy Mental Health Center, but [Defendant] has since been adjudged to be no longer seriously mentally impaired and the underlying

---

[4] The record is unclear regarding when Defendant re-filed his motion for return of the seized property.

> mental health case has been dismissed. He was never adjudged mentally defective.

Judge Clarke ordered that, unless the state timely filed a notice of appeal and obtained a stay of his Order, the property be returned to Defendant on December 9, 2003.

At one or more times during the pendency of the state action, Plaintiff, through the United States Attorney's Office, communicated with the Black Hawk County Attorney's Office regarding the status of the case.[5] On November 19, 2003, the Black Hawk County Attorney's Office sent to the United States Attorney's Office by facsimile a copy of Judge Clarke's November 6, 2003 Order. On December 5, 2003, Plaintiff seized the property (except for the pellet pistol and its case and blowgun ammunition) at the Black Hawk County Sheriff's Office. Plaintiff contends it seized the property as part of an investigation into whether or not Defendant is in violation of 18 U.S.C. § 922(g)(4). Plaintiff asserts its investigation is now concluded and the United States no longer needs the seized items as evidence. Plaintiff, following its alleged investigation, did not file criminal charges against Defendant.[6] Rather, Plaintiff filed this civil declaratory judgment action.

---

[5] Although this is not included in Plaintiff's Statement of Material Facts, Plaintiff twice made such admission in its Supplemental Brief to [its] Motion for Summary Judgment and during oral argument on the Motion for Summary Judgment. Therefore, the court finds it is an undisputed material fact in this case. Plaintiff did not expound upon the form and frequency of such communications with the Black Hawk County Attorney's Office during the pendency of the state court action in its Supplemental Brief to [its] Motion for Summary Judgment or during oral argument on the Motion for Summary Judgment.

[6] At oral argument, Plaintiff explained why no criminal charges were filed against Defendant in this case. The firearms and ammunition were seized prior to Defendant's mental health proceedings and have not been returned to him at any time since those proceedings. Therefore, Defendant has not yet had an opportunity to violate § 922(g)(4)

(continued…)

On July 29, 2004, Plaintiff filed the Complaint in this matter asking the court to declare, pursuant to § 922(g)(4): (1) the items listed in Exhibit 1 of the Complaint (except the pellet pistol and its case and blowgun ammunition) and seized by Plaintiff are contraband as to Defendant; and (2) Defendant may not possess or exercise any control over such items. Plaintiff also seeks an Order permitting the government to destroy the seized items.

On March 14, 2005, Defendant, through counsel, answered the Complaint. In his Memorandum in Support of [Defendant's] Resistance to [Plaintiff's] Complaint, Defendant disputes some of Plaintiff's facts and contends: (1) the items were not lawfully seized in plain view, as Plaintiff alleges; (2) Defendant has not been adjudicated as a "mental defective"; (3) Defendant was not committed to a mental institution; and (4) if the court does not return the items to Defendant, there are equitable remedies available to the court other than allowing Plaintiff to destroy Defendant's property without compensating him.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Carter v. Ford Motor Co.,* 121 F.3d 1146, 1148 (8th Cir. 1997) (citing *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996)). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law."

---

[6](…continued)
by possessing firearms and ammunition after having been adjudicated mentally defective or committed to a mental institution.

*Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999). In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*, 475 U.S. at 587. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id.*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 394 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and, by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## IV. DECLARATORY JUDGMENT STANDARD

The United States Code provides for a court to issue a declaratory judgment as follows:

> In a case of actual controversy within its jurisdiction, [except in various circumstances which do not exist here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Additionally, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing,

against any adverse party whose rights have been determined by such judgment." *Id.* § 2202. The declaratory judgment procedures initiated pursuant to 28 U.S.C. § 2201 must comply with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 57. The fact an alternate remedy may exist does not preclude a declaratory judgment where one is appropriate. *Id.*

## V. COLLATERAL ESTOPPEL

In his November 6, 2003 Order returning Defendant's firearms and ammunition to Defendant, Judge Clarke addressed the applicability of 18 U.S.C. § 922(g)(4). Thus, this court ordered the parties to file supplemental briefs regarding whether collateral estoppel prevents this court from reconsidering the application of § 922(g)(4) to Defendant in this case. Because § 922(g)(4) is the sole authority Plaintiff relies upon in support of its assertion Defendant is not entitled to possess the firearms and ammunition, if the court finds collateral estoppel applies, the court must grant summary judgment in Defendant's favor and dismiss the Complaint.[7]

Pursuant to the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, 'the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Tyus v. Schoemehl*, 93 F.3d 449, 453 (8th Cir. 1996) (quoting *Restatement (Second) of Judgments*

---

[7] This court has the authority to grant summary judgment against the moving party even when the nonmoving party has not made a cross-motion for summary judgment. *Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000, 1004-05 (8th Cir. 1991). This is because "[w]hen there has been a motion but no cross-motion, the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of summary judgment." 10A Wright, Miller, & Kane, *Federal Practice and Procedure* § 2720 (1998).

§ 27 (1982)).[8] The doctrine prevents the relitigation of a particular issue by the parties to the original action and anyone in privity with those parties if all of the following circumstances exist: (1) the issue determined in the prior action is identical to the present issue sought to be precluded; (2) the issue was actually litigated in the prior action; (3) the issue was determined in the prior action by a valid and final judgment; and (4) the determination made of the issue in the prior action was essential to that resulting judgment. *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 701 (8th Cir. 2003) (citing *Tyus*, 93 F.3d at 453).

## A. Application of the Elements of Collateral Estoppel

Defendant contends collateral estoppel applies in this case; Plaintiff responds it does not. The parties agree Judge Clarke's ruling in his November 6, 2003 Order satisfies the first three elements of collateral estoppel: (1) the issue determined in the prior action, i.e., whether Defendant is entitled to the return of his firearms and ammunition or whether § 922(g)(4) prevents him from lawfully owning firearms and ammunition, is identical to the present issue; (2) the applicability of § 922(g)(4) was actually litigated in the prior action; and (3) Judge Clarke's ruling on the issue was a valid and final judgment. *See id.* The parties' dispute focuses on the fourth element: whether Judge Clarke's determination regarding the applicability of § 922(g)(4) in the prior action was essential to that resulting judgment. Defendant argues Judge Clarke's determination Defendant had never been committed or adjudged a mental defect was essential to the resulting judgment. Plaintiff argues Judge Clarke's ruling regarding the applicability of § 922(g)(4) was merely an

---

[8] Both parties applied the Iowa doctrine of collateral estoppel, which is similar to the federal doctrine set forth herein. Because the court's jurisdiction is based on a federal question rather than diversity of the parties, the court finds it appropriate to apply the federal doctrine of collateral estoppel.

alternative to his determination made pursuant to Iowa Code § 809.5(2). Furthermore, Plaintiff contends Judge Clarke (erroneously) determined § 922(g)(4) did not apply because the firearms had never left Black Hawk County, Iowa and merely in the alternative decided Defendant was not committed to a mental institution and was not adjudged mentally defective. Therefore, Plaintiff asserts Judge Clarke's determination regarding the applicability of § 922(g)(4) was not essential to the final judgment.

Judge Clarke determined it was appropriate to return Defendant's seized property pursuant to Iowa Code § 809.5. That section of the Iowa Code provides, in relevant part, as follows:

> Seized property which is no longer required as evidence or for use in an investigation may be returned to the owner without the requirement of a hearing, *provided that the person's possession of the property is not prohibited by law* and there is no forfeiture claim filed on behalf of the state.

Iowa Code § 809.5(1) (emphasis added). Section 809.5 further provides for a hearing regarding an individual's right to possess the seized property and subsequent return of such property in the following manner:

> Upon the filing of a claim and following a hearing by the court, property which has been seized shall be returned to the person who demonstrates a right to possession, unless one or more of the following is true:
> a. *The possession of the property by the claimant is prohibited by law.*

*Id.* § 809.5(2) (emphasis added). The plain language of Iowa Code § 809.5(1) and (2) prevents the return of property to an individual if the individual's possession is prohibited by any law, not merely Iowa law. In the case before Judge Clarke, the Black Hawk County Attorney's Office raised the issue of whether Defendant is prohibited from possessing the seized firearms and ammunition pursuant to 18 U.S.C. § 922(g)(4) even

12

though that is a federal, not state, statute. Judge Clarke considered § 922(g)(4) and determined (albeit erroneously as a matter of law) that statute, which, under Iowa Code § 809.5(2)(a), could prevent the return of seized property to individuals who met the criteria in the federal statute, both (1) did not apply to Defendant and (2) did not prevent the seized property from being returned to him. Judge Clarke provided three rationales to support these determinations. First, the property remained in Black Hawk County and was never shipped through interstate commerce since the time Defendant legally possessed the property (prior to August 2002). Second, Defendant never was committed to a mental institution. Third, Defendant never was adjudged mentally defective. The court finds Judge Clarke's determination (although legally incorrect) regarding § 922(g)(4) was essential to the final judgment. If Judge Clarke had not determined § 922(g)(4) did not apply to Defendant, Judge Clarke would have had to determine the federal statute prohibited Defendant from possessing the property. Thus, Judge Clarke could not have ordered Defendant's property returned to him pursuant to Iowa Code § 809.5(2). Therefore, the court finds all four essential elements to establish collateral estoppel exist in this case.

The court is unpersuaded by Plaintiff's argument that Judge Clarke's three bases for refusing to apply § 922(g)(4) are alternative determinations and thus, none of the bases was essential to the final judgment. The court interprets Judge Clarke's ruling as a thorough explanation as to why he did not apply § 922(g)(4). Furthermore, all three determinations lead to the same conclusion: § 922(g)(4) does not prevent the seized property from being returned to Defendant. The court believes Plaintiff confuses Judge Clarke's use of multiple grounds for determining § 922(g)(4) does not apply to Defendant with the concept of alternative bases (e.g., separate Iowa Code sections or Iowa case law) Judge Clarke might have used in ordering the return of the seized property.

## B.  Privity and Virtual Representation

Plaintiff next argues collateral estoppel is inappropriate because it was not a party to the prior action and it is not in privity with the Black Hawk County Attorney's Office. Defendant responds Plaintiff received "virtual representation" by the Black Hawk County Attorney's Office such that applying collateral estoppel would not violate due process in this case.

The Eighth Circuit Court of Appeals has determined collateral estoppel not only bars relitigation of an issue by the parties to the prior action but also anyone who is in privity with a party to the prior action. *Tyus*, 93 F.3d at 453. The rule barring those in privity with a party to the former lawsuit is intended to conserve judicial resources and to protect parties from "the expense and vexation of attending multiple lawsuits." *Id.* at 453-54 (quotation marks and citations omitted). However, "[b]ecause preclusion based on privity is an exception to the 'deep-rooted historic tradition that everyone should have his own day in court,' courts must ensure that the relationship between the party to the original suit and the party sought to be precluded in the later suit is sufficiently close to justify preclusion." *Id.* at 454. The Supreme Court has characterized the relationship as one of "substantial identity" between the two parties. *Chi., Rock Island & Pac. Ry. Co. v. Schendel*, 270 U.S. 611, 621 (1926). A party's right to due process prevents the application of collateral estoppel "'when the relationship between the party and non-party becomes too attenuated.'" *Tyus*, 93 F.3d at 454 (quoting *Southwest Airlines Co. v. Texas Int'l Airlines*, 546 F.2d 84, 95 (5th Cir. 1977)).

The Eighth Circuit Court of Appeals has recognized three categories of parties who did not participate in the prior action who will be considered in privity for purposes of binding them to the prior adjudication: "(1) a nonparty who controls the original action; (2) a successor-in-interest to a prior party; and (3) a nonparty whose interests were

adequately represented by a party to the original action." *Id.* The Eighth Circuit Court of Appeals has expounded upon the third category, which it has termed, "virtual representation." *Id.* The Eighth Circuit Court of Appeals has recognized the use of "virtual representation" as follows: "'a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.'" *Id.* (quoting *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)).[9] The Eighth Circuit Court of Appeals approved a "wide use of virtual representation, inquiring whether there exists a substantial relationship between the party and nonparty, such that [in the prior litigation,] the party adequately represented the interests of the nonparty." *Id.* Due to the fact such inquiries focus on the specific facts of a case, the Eighth Circuit Court of Appeals recognized, "there is no clear test that can be employed to determine if virtual representation is appropriate" in a particular situation. *Id.* However, the Eighth Circuit Court of Appeals noted that because "'virtual representation has a pronounced equitable dimension[,]' . . . [a] nonparty will be barred from bringing his claim only when 'the balance of the relevant equities tips in favor of preclusion.'" *Id.* (quoting *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 761 (1st Cir. 1994)). Further, the Eighth Circuit Court of Appeals instructed courts to apply virtual representation only when they find "the existence of some special relationship between the parties justifying preclusion[,]" which essentially means courts must find the parties are in privity before precluding a nonparty from relitigating an issue. *Id.* at 455.

The Eighth Circuit Court of Appeals has given some guidance to district courts as to when it is appropriate to apply virtual representation: "where there is a special

---

[9] Although the Fifth Circuit Court of Appeals was referring to the doctrine of res judicata, the Eighth Circuit Court of Appeals applied virtual representation in the collateral estoppel context in *Tyus*, 93 F.3d at 456.

relationship between the parties, determined after analyzing the factors listed below, then the parties are in privity. . . ." *Id.* First, while the two parties' interests must be identical, that alone is insufficient. *Id.* "Other factors to be considered 'include a close relationship between the prior and present parties; participation in the prior litigation; apparent acquiescence; and whether the present party deliberately maneuvered to avoid the effects of the first action.'" *Id.* (quoting *Petit v. City of Chicago*, 766 F. Supp. 607, 612 (N.D. Ill. 1991) (internal citation omitted)). Second, the court must consider the adequacy of the virtual representation in terms of the prior party's incentive to litigate. *Id.* "That is, one party 'adequately represents' the interests of another when the interests of the two parties are very closely aligned and the first party had a strong incentive to protect the interests of the second party." *Id.* at 455-56. Third, the court must consider whether the nature of the issue raised is a public law issue or a private law issue. *Id.* at 456. "Although virtual representation may be used in the private law context, its use is particularly appropriate for public law uses." *Id.* This is because a public law issue may be relitigated by numerous plaintiffs, thus wasting judicial resources: "[h]olding preclusion inapplicable in [a public law] context would encourage fence-sitting, because nonparties would benefit if the plaintiffs were successful but would not be penalized if the plaintiffs lost." *Id.*

The Supreme Court has "expressly declined to adopt 'a flat rule that estoppel may not in any circumstances run against the [Federal] Government.'" *United States v. Locke*, 471 U.S. 84, 112 (1985) (quoting *Heckler v. Comm. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984)); *see also United States v. Lazy FC Ranch*, 481 F.2d 985, 989 (9th Cir. 1973) ("The estoppel doctrine is applicable to the United States where justice and fair play require it."); *United States v. Fox Lake State Bank*, 366 F.2d 962, 965 (7th Cir, 1966) ("In proper circumstances the doctrine [of collateral estoppel] does apply [to

the federal government].”); *Massaglia v. Comm’r*, 286 F.2d 258, 262 (10th Cir. 1961)
(“The very nature of government operations requires us to apply the principles of estoppel
to its conduct with circumspection. . . . At the same time, we will not allow the
government to deal dishonorably or capriciously with its citizens. It must not play an
ignoble part or do a shabby thing.”). In fact, the court looks to three Supreme Court cases
in which the Court determined collateral estoppel prevented the federal government from
relitigating an issue previously litigated. For example, in *United States v. Stauffer
Chemical Co.*, 464 U.S. 165 (1984), the Environmental Protection Agency (“EPA”)
sought to litigate in federal court in Tennessee the issue of whether private contractors are
“authorized representatives” of the EPA. The EPA already had litigated the same issue
in federal court in Wyoming and received an adverse ruling. The Supreme Court opined
collateral estoppel may prevent the federal government, just like any other party, from
relitigating an identical issue of fact or law. *Id.* at 170-74.[10] Therefore, the Court held
the federal government was precluded from relitigating the issue. *Id.* at 175.

Again, in *Montana v. United States*, 440 U.S. 147 (1979), the federal government
attempted to contest the constitutionality of a Montana statute imposing a state tax on
contractors of public, but not private, construction projects. A government contractor, at
the direction of the United States, previously had filed suit in Montana state court attacking
the constitutionality of the statute and the Montana Supreme Court ruled in favor of the
state. The Supreme Court held the government was estopped from pursuing the
subsequent litigation. *Id.* at 164. In that case, the Supreme Court listed the government’s
involvement in the prior action:

---

[10] The exception, which applies to both the federal government and private parties,
is that where an issue of law previously litigated later arises in a factually distinct case, the
parties to the subsequent litigation are not estopped from relitigating the law. *Id.* at 171.

> That the United States exercised control over the [prior] litigation is not in dispute. The Government has stipulated that it:
>
> (1) required the [prior] lawsuit to be filed;
>
> (2) reviewed and approved the complaint;
>
> (3) paid the attorneys' fees and costs;
>
> (4) directed the appeal from State District Court to the Montana Supreme Court;
>
> (5) appeared and submitted a brief as *amicus* in the Montana Supreme Court;
>
> (6) directed the filing of a notice of appeal to this [United States Supreme] Court; and
>
> (7) effectuated [the contractor's] abandonment of that appeal on advice of the Solicitor General.

*Id.* at 154. Thus, the Supreme Court determined the federal government "plainly had a sufficient 'laboring oar' in the conduct of the [prior] state-court litigation to actuate principles of estoppel." *Id.* (quoting *Drummond v. United States*, 324 U.S. 316, 318 (1945)).

Finally, in *Ashe v. Swenson*, 397 U.S. 436 (1970), the Supreme Court held collateral estoppel bars the federal government from pursuing a forfeiture if, in the earlier criminal proceeding, all of the elements of the forfeiture were raised and resolved against the government. *Id.* at 443.

In the present case, the factors weigh in favor of estopping Plaintiff from pursuing the instant declaratory judgment action because the Black Hawk County Attorney's Office virtually represented Plaintiff in the state action. First, it is clear Plaintiff and the Black Hawk County Attorney's Office have identical interests regarding the issue of whether Defendant is precluded from legally possessing firearms and ammunition. *See Tyus*, 93 F.3d at 455 (holding identicality of parties is required). Moreover, the parties' close relationship is demonstrated by Plaintiff's admission the United States Attorney's Office

discussed the case with the Black Hawk County Attorney's Office during the pendency of the state action and Plaintiff's further admission the Black Hawk County Attorney's Office sent to Plaintiff a copy of the Order mandating return of the firearms. *See id.* (listing "a close relationship between the prior and present parties" as a relevant factor). Furthermore, the timing and manner of Plaintiff's seizure of the firearms and ammunition in controversy leads the court to believe Plaintiff apparently acquiesced in the Black Hawk County Attorney's Office first raising the issue of Defendant's illegal possession of the firearms and ammunition under 18 U.S.C. § 922(g)(4). *See Tyus*, 93 F.3d at 455 (listing "apparent acquiescence" as another factor to be considered). The court notes on November 6, 2003, Judge Clarke issued his Order mandating the Black Hawk County Attorney's Office return Defendant's firearms and ammunition to him. Judge Clarke ordered that unless a timely notice of appeal was filed and a stay of his Order was obtained, the Black Hawk County Attorney's Office was to return the firearms and ammunition on December 9, 2003. The Black Hawk County Attorney's Office neither filed a timely notice of appeal nor obtained a stay of Judge Clarke's Order. Instead, on November 19, 2003, the Black Hawk County Attorney's Office sent by facsimile a copy of Judge Clarke's Order to the United States Attorney's Office and on December 5, 2003, one month after the ruling adverse to the Black Hawk County Attorney's Office and only four days prior to the date on which Judge Clarke ordered the firearms and ammunition to be returned to Defendant, Plaintiff seized the property from the Black Hawk County Sheriff's Office. Plaintiff contends it seized the firearms and ammunition "in plain view"; thus, Plaintiff must have been notified when the items would be removed from their evidence locker at the Black Hawk County Sheriff's Office.[11] The court notes Plaintiff

---

[11] Under the plain view doctrine, "if police are lawfully in a position from which
(continued...)

19

does not allege it seized the items from Defendant in plain view as he removed his possessions from the Black Hawk County Sheriff's Office. Rather, Plaintiff seized the items from the Black Hawk County Sheriff's Office, outside the presence of Defendant, allegedly to investigate whether Defendant's possession of such items would violate § 922(g)(4). If Plaintiff had seized the items from Defendant, it likely would have filed criminal charges against him for allegedly violating § 922(g)(4). This indicates Plaintiff seized the firearms and ammunition before Defendant repossessed them from the Black Hawk County Sheriff's Office.[12] Rather than the Black Hawk County Attorney's Office appealing Judge Clarke's ruling in state court, as would have been appropriate in this case, the Black Hawk County Attorney's Office and the United States Attorney's Office arranged for Plaintiff to file the instant declaratory judgment action as an end-run around Judge Clarke's adverse ruling. Therefore, the court finds Plaintiff and the Black Hawk County

---

[11](...continued)

they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *United States v. Gillon*, 348 F.3d 755, 759 (8th Cir. 2003). "The 'immediately apparent' requirement means that officers must have 'probable cause to associate the property with criminal activity.'" *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) (quoting *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990)). At the time Plaintiff seized the items, Judge Clarke had determined Defendant was legally entitled to repossess his firearms and ammunition. Therefore, the court cannot conceive of how Plaintiff could have had probable cause to associate the firearms and ammunition with criminal activity. The alternative is the items were not seized in plain view and the Black Hawk County Sheriff's Office removed the items from their evidence locker at Plaintiff's request without a search warrant or Defendant's consent.

[12] Plaintiff admitted as much during the oral argument on the Motion for Summary Judgment when it stated Defendant has not possessed the firearms and ammunition since the commencement of his mental health proceedings.

Attorney's Office had identical interests and a close relationship and Plaintiff apparently acquiesced in the Black Hawk County Attorney's Office litigating the issue first.

In deciding whether virtual representation applies, the court must next consider the adequacy of the Black Hawk County Attorney's Office's representation of Plaintiff's interests in terms of the Black Hawk County Attorney's Office's incentive to litigate. *See Tyus*, 93 F.3d at 455. Plaintiff contends the Black Hawk County Attorney's Office did not adequately represent its interests in the prior state court litigation for two reasons: (1) county prosecutors are not as familiar with issues of federal law as are federal prosecutors; and (2) the Black Hawk County Attorney's Office based much of its argument on an Iowa Code provision rather than on the federal statute. The court finds Plaintiff's arguments unpersuasive. The Eighth Circuit Court of Appeals has determined:

> adequacy of representation refers to incentive to litigate rather than to actual trial strategy and possible trial errors. . . . While incentive to litigate may have some bearing on whether the two parties' interests are aligned, considerations of trial strategy and possible trial errors, because they have little bearing on the *relationship* between the parties, are external to this inquiry.

*Id.* at 455 n.7 (emphasis in original). The Eighth Circuit Court of Appeals gave an example of the application of this factor:

> If party A is a proxy for party B, then we should hold party B to the same standards as we would hold party A. To not apply virtual representation when counsel is deficient would encourage fence-sitting: the nonparty will benefit if the party plaintiff wins, but if the party plaintiff loses due to counsel's deficient performance, the nonparty could refile suit, thereby tactically maneuvering around counsel's deficient performance. Thus, applying preclusion in this situation not only reinforces the goal of judicial economy, but it also prevents an end-run around the rule that parties are responsible for the acts of their

counsel.

*Id.* In this case, the Black Hawk County Attorney's Office had an incentive to litigate the issue of whether Defendant was prevented from possessing his firearms and ammunition under 18 U.S.C. § 922(g)(4) because the resolution of that issue impacted directly on whether Defendant was legally entitled to possess his firearms and ammunition under Iowa Code § 809.5(2). If the Black Hawk County Attorney's Office had prevailed on its argument § 922(g)(4) prevents the return of Defendant's firearms, it would have prevailed in the state court action pursuant to Iowa Code § 809.5(2) and Defendant would have been deprived of his firearms and ammunition. Whether the Black Hawk County Attorney's Office is as familiar with the federal statute as the United States Attorney's Office is irrelevant. The "interstate nexus" element of § 922(g)(4) has been settled law for decades and there is abundant case law defining it. The Black Hawk County Attorney's Office could have researched federal case law regarding the remaining elements of § 922(g)(4) and persuaded Judge Clarke the statute applied to Defendant. Further, Plaintiff did not present the court with any evidence regarding the Black Hawk County Attorney's Office's arguments in the state action other than Judge Clarke's Order, in which it appears the Black Hawk County Attorney's Office heavily relied upon § 922(g)(4) in its case. Therefore, the court finds the Black Hawk County Attorney's Office's representation of Plaintiff's interests was adequate in terms of its incentive to litigate.

Finally, the court notes this is a private, rather than a public, law issue. This factor is not fatal to the virtual representation issue, however, as the Eighth Circuit Court of Appeals determined virtual representation may apply to private law contexts as well as to public law contexts. *See Tyus*, 93 F.3d at 456.

For the reasons stated herein, the court finds Plaintiff is collaterally estopped from contending 18 U.S.C. § 922(g)(4) prevents Defendant from possessing the firearms and

ammunition in question. This is a situation in which the balance of the relevant equities tips in favor of preclusion. If this court were to reconsider the issue previously litigated in state court, Defendant would be required to defend two identical actions, there would exist a possibility of rendering an inconsistent decision, and valuable judicial resources would not be conserved. *See Montana*, 440 U.S. at 153-54 ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."). Because Plaintiff is collaterally estopped from pursuing the instant declaratory judgment action based on § 922(g)(4), this case must be dismissed as a matter of law.[13]

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1)     Plaintiff's Motion for Summary Judgment (docket no. 5) is **DENIED**. The court declines to issue a declaratory judgment as Plaintiff requests.

(2)     The court **GRANTS** summary judgment in favor of Defendant.

(3)     Plaintiff's Complaint for Declaratory Judgment and Ancillary Relief is **DISMISSED** with prejudice.

(4)     Plaintiff shall return all of the seized items to Defendant within thirty days of the date of this Order.

---

[13] This case must be dismissed because collateral estoppel prevents Plaintiff from pursuing the instant litigation. Thus, the court need not address the issue of res judicata.

**SO ORDERED.**

**DATED** this 7th day of July, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA